## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Paul Throndson,**
**Individually and on behalf**
**of all others similarly situated,**                        **Case No. 2:19-cv-1789**

      **Plaintiff,**                              **Judge Michael H. Watson**

      **v.**                                       **Magistrate Judge Vascura**

**Huntington National Bank,**

      **Defendant.**

## <u>OPINION AND ORDER</u>

Paul Throndson ("Plaintiff") sues Huntington National Bank ("Defendant")

for alleged violations of the Telephone Consumer Protection Act of 1991

("TCPA"), 47 U.S.C. § 227, for making prerecorded debt-collection calls to his

cell phone. Compl., ECF No. 1. Plaintiff seeks to represent a class of similarly

situated individuals, but no class has been certified. Instead, the Court bifurcated

Plaintiff's individual claim. Pretrial Order 2, ECF No. 18. Defendant now moves

for summary judgment on Plaintiff's individual claim, arguing Plaintiff lacks Article

III standing to pursue that claim. Mot. Summ. J., ECF No. 27. For the following

reasons, the Court **DENIES** Defendant's motion.

### I.    FACTS

Plaintiff is a Unit Manager for Peterbilt, an entity that builds trucks.

Throndson Dep. 11:16–21, ECF No. 30. He manages a team of ten employees,

*id.* at 12:1–4, one of whom is Kenneth Cousins ("Cousins"). *Id.* at 16:17–18.

Plaintiff gave his personal cell phone number to other managers at Peterbilt as well as to the employees who report to him (including Cousins), in case anyone needed to reach him.  *Id.* at 23:14–24:5.

At some point, Cousins applied for an auto loan with Defendant.  Mortenson Decl. ¶ 2, ECF No. 27-2.  When he did so, he listed Plaintiff's cell phone number as his own work phone number.  *Id.* ¶ 3.

Defendant did not receive Cousins' auto loan payment for the month of April 2019.  *Id.* ¶ 5.  Defendant then called the phone number listed on the account—Plaintiff's cell phone number.  *Id.* ¶ 8.  Defendant did so on April 13, 2019, and, when Plaintiff did not answer the call, left a fifty-nine second prerecorded voicemail.  Throndson Dep. 36:21–23, ECF No. 30.  Plaintiff did not return the call.  *See id.* at 54:9–10.  Defendant then called again on April 15, 2019, which call also went unanswered, and left an identical prerecorded voicemail on that date.  *Id.* at 37:2–4; 39:8–12.

Plaintiff listened to the voicemails or read the transcribed voice messages.  *Id.* at 30:5–9, 31:9–11.  He notified Cousins that Defendant was trying to reach Cousins.  *Id.* at 31:22–32:6; 40:13–41:12.  The day after the second call, Cousins' wife called Defendant and made the missed auto loan payment over the telephone.  Mortenson Decl. ¶ 9, ECF No. 27-2.  After speaking with Cousins' wife, Defendant removed Plaintiff's cell phone number from Cousins' account information, and Defendant has not contacted Plaintiff since April 15, 2019.  Throndson Dep. 55:2–5, ECF No. 30; Mortenson Decl. ¶ 10, ECF No. 27-2.

Plaintiff alleges that, by leaving the prerecorded voicemails on his cell phone, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii). That section of the TCPA states that it is unlawful for:

> [A]ny person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation

omitted).  "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute."  *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record").  "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate."  *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III.  ANALYSIS

As stated above, the TCPA prohibits any person in the United States from "mak[ing] any call (other than a call made . . . with the prior express consent of the called party) using any . . . prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ."  47 U.S.C. § 227(b)(1)(A).  Plaintiff's sole claim is that Defendant violated this provision by leaving two prerecorded voice messages on his cell phone.  Compl. ¶¶ 27–32, ECF No. 1.  Defendant's only ground for dismissal is that Plaintiff lacks standing to bring that claim.

Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and

unchanging part of" this requirement. U.S. Const. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A federal court must not go "beyond the bounds of authorized judicial action and thus offend[ ] fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). If the plaintiff lacks standing, then the federal court lacks jurisdiction. Thus, standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Article III standing has three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (internal alterations omitted). Third, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 561.

The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare,* 517 F.3d 911, 916 (6th Cir. 2008). Each element of standing must be supported with the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561. "At summary judgment, the current stage of this litigation, [Plaintiff] cannot rely on allegations alone but must set forth evidence demonstrating his standing." *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1117, 206 L. Ed. 2d 185 (2020).

Although Defendant also asserts that any injury Plaintiff suffered is not fairly traceable to it, its motion primarily attacks the first standing element—the existence of an injury in fact.  The Court therefore begins by analyzing whether Plaintiff has suffered an injury in fact.

## A. Injury-In-Fact

Defendant contends that Plaintiff has not suffered an injury in fact because his injuries do not meet the concreteness standard discussed in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* at 1548.

The Sixth Circuit recently elaborated on the injury-in-fact requirement (in the Fair Credit Reporting Act context) in *Huff*.  The Sixth Circuit explained there are three ways to satisfy the Article III injury requirement in cases like this one.  First, Plaintiff can show that "the statutory violation created an injury in fact as applied to [Plaintiff] because it actually injured him."  *Id.* at 463.  Second, he can demonstrate that "the statutory violation did not injure him in any traditional way, but the risk of injury was so imminent that it satisfies Article III."  *Id.*  Third, he may show that "the statutory violation did not create an injury in any traditional sense, but Congress had authority to establish the injury in view of its identification of meaningful risks of harm in this area."  *Id.*  Plaintiff invokes only the third method of establishing standing, and the Court therefore confines its analysis to the same.

In determining whether an intangible injury established by Congress is nonetheless concrete, courts look to historical practice and the judgment of Congress. *Id.* at 464. "Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

Additionally, Congress's judgment is "instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.*

At the same time, "Congress's authority to create Article III injuries" has limits, and "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (internal quotation marks and citation omitted). In other words, Plaintiff does not automatically satisfy the injury-in-fact requirement simply because the TCPA grants a statutory right and purports to authorize private rights of action, *id.*, and "there is no such thing as an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury."[1] *Huff*, 923 F.3d at 463 (internal quotation marks and citation omitted).

---

[1] For this reason, courts must distinguish between establishing the elements of a cause of action and establishing an Article III injury; proof of the former does not necessarily also establish the latter. *Huff*, 923 F.3d at 462.

In sum, "[a]lthough Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018) (citation omitted).

### 1. *Spokeo's* Application to Substantive Violations

The Court digresses here to discuss the distinction between substantive violations and procedural violations.  *Spokeo* involved a procedural violation of the Fair Credit Reporting Act and is often invoked when a plaintiff alleges any statutory violation that is merely a "bare procedural violation."  Because *Spokeo* stated that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" without the allegation of any additional harm beyond those identified by Congress, 136 S. Ct. at 1549, courts often apply the *Spokeo* reasoning to determine whether a bare procedural violation amounts to a concrete injury.  The Sixth Circuit often discusses *Spokeo* in this context of whether bare procedural violations alleged by a plaintiff satisfy Article III's injury-in-fact requirement.  *See, e.g., Huff*, 923 F.3d at 466 (referring to the defendant's conduct as "a seemingly harmless procedural violation"); *Hagy*, 882 F.3d at 622 (Plaintiffs "have not shown . . . that this failure to disclose caused them any actual harm beyond that 'bare procedural violation'"); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 757 (6th Cir. 2018) ("Assuming arguendo

that the language of [the defendant's] letters constitute[d] a procedural violation of the FDCPA . . . .").

At least one court analyzing violations of § 227(b)(1)(A)(iii) of the TCPA has concluded that *Spokeo* is irrelevant because violations of § 227(b)(1)(A)(iii) are substantive rather than procedural. *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 644 (N.D. W. Va. June 30, 2016) (finding *Spokeo's* observation "has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed toward specific consumers").

This Court, however, finds *Spokeo* just as applicable when a plaintiff alleges an intangible injury resulting from a substantive violation. As the Seventh Circuit has recognized, "whether [a] right is characterized as 'substantive' or 'procedural,' its violation must be accompanied by an injury-in-fact. A violation of a statute that causes no harm does not trigger a federal case. That is one of the lessons of *Spokeo*." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016); *but see Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) (finding *Spokeo* did not apply when analyzing a violation of a substantive protection); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 n.2 (11th Cir. 2016) (finding *Spokeo* inapplicable when a plaintiff alleges a violation of a substantive right). Indeed, in *Spokeo*, the Supreme Court was clear that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. Although *Spokeo* involved a

procedural violation, the Supreme Court did not limit the above pronouncement to procedural violations and even used procedural violations divorced from concrete harm as just one "example" of a type of statutory violation that would not confer an Article III injury. *Id.*

Accordingly, the Court concludes that Plaintiff must show a concrete injury for the alleged violation of § 227(b)(1)(A)(iii), regardless of whether that statutory violation is deemed procedural or substantive.[2] Moreover, because Plaintiff alleges an intangible injury, *Spokeo's* guidance (and the Sixth Circuit's interpretation thereof) applies to determine whether that intangible injury is concrete. Although much of the Sixth Circuit language below discusses *Spokeo's* guidance in terms of "procedural" violations, the Court finds that the rules below apply with equal force to determining the concreteness of an intangible injury caused by a substantive violation. *Cf. Huff*, 923 F.3d at 464 (arguably referring to "procedural" and "intangible" injury interchangeably).

### 2. *Spokeo* as Interpreted by the Sixth Circuit

The Sixth Circuit has found that "'*Spokeo* allows for a bare procedural violation to create a concrete harm' in cases alleging 'failure to comply with a statutory procedure that was designed to protect against the harm the statute

---

[2] As a practical matter, it may be easier to show a concrete injury in instances of violations of substantive rights because substantive rights typically directly correspond to concrete injuries the statute was enacted to prevent, whereas procedural rights may less often be conferred to protect against the same harm the statute was enacted to protect against.

was enacted to prevent.'"  *Macy*, 897 F.3d at 756 (quoting *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017)).  Thus, when analyzing whether a bare procedural violation of a statute amounts to an intangible but concrete harm, the Sixth Circuit considers whether: (1) Congress enacted the procedural right to protect a plaintiff's concrete interests; and (2) the procedural violation harmed, or presented a material risk of real harm to, those concrete interests.  *Id.*

This Court applies that same test to the Congressional judgment portion of the *Spokeo* intangible injury analysis here and looks to whether: (1) Congress enacted the prohibition on prerecorded calls to cellular phones to protect a plaintiff's concrete interests, and (2) Defendant's alleged violation of that prohibition harmed or presented a material risk of real harm to those identified concrete interests.

### 3. Application of *Spokeo* to this Case

Plaintiff suggests that "[e]very court of appeals to address the question post-*Spokeo*" has found that § 227(b)(1)(A)(iii) was designed to protect against the harm the TCPA was designed to prevent.  Resp. 5, ECF No. 34.  But two of the cases Plaintiff cites, *Golan v. Veritas Ent., LLC*, 788 F.3d 814, (8th Cir. 2015) and *Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 46 (2nd Cir. 2017), involved violations of § 227(b)(1)(B), which prohibits prerecorded calls to residential telephone lines, and it is undisputed that Congress was concerned with intrusions upon domestic seclusion in enacting the TCPA, and in enacting § 227(b)(1)(B) in particular.  Moreover, although *Susinno v. Work Out World Inc.*,

862 F.3d 346, 351–52 (3rd Cir. 2017) involved a prerecorded call to a cell phone, it (like *Golan* and *Leyse*) involved telemarketing—another area Congress was undoubtedly concerned with when enacting the TCPA. "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). That is why unrestricted, unsolicited telemarketing, and the nuisance and invasion of privacy that comes therefrom, are exactly the harms the TCPA was enacted to prevent.

This case, however, does not involve calls to a residence or telemarketing calls. It involves a creditor using a prerecorded voice to call the telephone number that its debtor listed on his application after that debtor failed to make a payment. Accordingly, the Court finds that *Susinno*, *Golan,* and *Leyse* do not necessarily answer the question in this case of whether the violation of § 227(b)(1)(A)(iii) harmed or created a material risk of harm to the interests that provision was enacted to protect. Instead, the Court performs its own analysis of the judgment of Congress and historical practice to determine whether Plaintiff has raised a genuine dispute of material fact that he has suffered an intangible, concrete harm.

### a. Judgment of Congress

In prohibiting the use of prerecorded calls, Congress found that "residential telephone subscribers consider automated or prerecorded telephone calls, *regardless of the content or the initiator of the message*, to be a nuisance and an

invasion of privacy." TELEPHONE CONSUMER PROTECTION ACT OF 1991, PL 102–243, December 20, 1991, 105 Stat 2394 (emphasis added). Banning most prerecorded calls to the home was meant to protect citizens from those nuisance and privacy intrusions. *Id.*

But Congress recognized that, "[w]hile . . . automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call, the Federal Communications Commission should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution." *Id.*

Still, Congress did not give the FCC discretion to categorically exempt certain types of prerecorded calls made to *cellular phones* upon finding such calls are not a nuisance or invasion of privacy. Rather, the discretion discussed above was given only for prerecorded calls to residential lines. § 227(b)(2)(B). The only discretion Congress gave the FCC with respect to prerecorded calls to wireless numbers is found in § 227(b)(2)(C), wherein Congress permitted the FCC to "exempt from the requirements of paragraph (1)(A)(iii) . . . calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interests of the privacy rights th[e] section is intended to protect." *See also* 23 F.C.C.R. 559 at 560.

In sum, when enacting the TCPA, Congress determined that all prerecorded calls, regardless of their source or subject matter, were a nuisance and an invasion of privacy.  To that end, Congress did not even grant the FCC discretion to exempt from the Act's prohibition on prerecorded calls certain categories of such calls to wireless phone numbers.  Accordingly, the Court concludes that prerecorded calls from debt collectors attempting to collect a debt implicate the same nuisance and privacy concerns that § 227(b)(1)(A)(iii)'s prohibition on the use of prerecorded calls was meant to protect against.  The judgment of Congress thus suggests that, to the extent Plaintiff actually suffered an intangible harm in that the calls were a nuisance or invaded his privacy, such harm is sufficiently concrete for Article III purposes.

### b.  Historical Practice

Additionally, the Court finds that those intangible injuries caused by prerecorded calls—again, of any nature or from any source—bear a close resemblance to the harms that were historically protected against by common law actions for, at least, intrusion upon seclusion.  Because this Court concluded above that Congress determined the harms from non-telemarketing prerecorded calls to cell phones are the same as the harms from prerecorded telemarketing calls or prerecorded calls to residences, those cases that have considered historical practice as it relates to prerecorded telemarketing calls or prerecorded calls to residential telephone lines are relevant to this part of the Court's injury analysis.  And although Defendant argues that such tort claims historically

required more significant intrusions, this Court agrees that the intangible harm a statute aims to prevent need not have itself amounted to a historical tort; it must simply bear a close relationship to the harm that provided the basis for a common-law tort.  *Susinno*, 862 F.3d at 351 ("[A] close relationship does not require that the newly proscribed conduct would give rise to a cause of action under common law[, b]ut it does require that newly established causes of action protect essentially the same interests that traditional causes of action sought to protect."  (internal quotation marks and citation omitted)).

This Court agrees with the myriad other courts that have concluded that the nuisance and invasion of privacy harms which concerned Congress when it enacted § 227(b)(1)(A)(iii) bear a close resemblance to the harms underlying common law torts such as intrusion upon seclusion.  *E.g.*, *id.* ("[W]hen Congress found that unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients, it sought to protect the same interests implicated in the traditional common law cause of action." (internal quotation marks and citation omitted)); *Golan*, 930 F.3d at 959 ("These harms [the receipt of two prerecorded telemarketing messages] bear a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance." (citation omitted)); *Hamza v. Dunhams Athleisure Corp.*, 2017 WL 1077895, at *3 (E.D. Mich. Mar. 22, 2017); *LaVigne v. First Comt'y Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1144–45 (D.N.M. 2016) ("Defendants cannot present a tenable argument that invasion of privacy is an

intangible harm that has not traditionally provided a basis for lawsuits in American courts, nor can they refute that the TCPA was enacted to protect that harm."). Accordingly, historical practice suggests that any intangible nuisance or invasion of privacy injury Plaintiff suffered as a result of Defendant's alleged violation is sufficiently concrete for Article III purposes.

### c. Conclusion Regarding Intangible Injuries

Having considered the judgment of Congress and historical common law protections, the Court concludes that prerecorded debt-collection calls to cellular phones, in violation of § 227(b)(1)(A)(iii), can create intangible but concrete injuries such as nuisance and invasion of privacy. Many other courts have reached the same conclusion. *E.g.*, *Romero v. Dep't Stores Nat'l Bank*, 725 F. App'x 537, 539 (9th Cir. 2018) (finding standing to sue for auto-dialed debt-collection calls, reasoning, "[t]he TCPA is not limited to telemarketing calls; Congress recognized unsolicited contact as a concrete harm regardless of caller or content, and this harm is similar in kind to harm that has traditionally been redressable by courts." (citations omitted)); *Manuel v. NRA Grp., LLC*, 722 F. App'x 141, 146 (3rd Cir. 2018) (finding consumer had standing to sue for allegedly autodialed debt collection calls to his cell phone); *Ammons v. Ally Fin., Inc.*, 326 F. Supp 3d 578, 589 (M.D. Tenn. 2018) (debtor had standing to sue for prerecorded debt-collection calls to cell phone based on both tangible and intangible injuries); *Fleming v. Associated Credit Servs, Inc.*, 342 F. Supp. 3d 563, 570 (D. N.J. 2018) (finding unwanted autodialed debt-collection calls "fall

within the prohibitory scope of the TCPA, which elevates them to the category of previously recognized injuries to privacy rights." (citation omitted)); *Ung v. Univ. Acceptance Corp.*, 198 F. Supp. 3d 1036, 1038–39 (D. Minn. 2016) (plaintiff had standing to sue for creditor's allegedly autodialed calls to plaintiff's cell phone in an attempt to reach someone who listed plaintiff as a credit reference); *Cf. Lavigne*, 215 F. Supp. 3d at 1147 ("[T]he TCPA contains a congressionally-identified concrete injury in its language prohibiting certain kinds of telephone calls.  This substantive prohibition sets it apart from the few cases which have determined that concrete injuries cannot result from bare statutory violations." (citations omitted)).

### d.  Evidence of Intangible Injury

Because this case is before the Court on a summary judgment motion, the Court next considers whether Plaintiff has presented evidence that he suffered such intangible injuries sufficient to withstand a motion for summary judgment.

Plaintiff testified that he listened to both prerecorded voicemails and that he was "severely" annoyed by those calls, which he found "very irritating." Throndson Dep. 30:5–9, 56: 6–7, 64:5–10, 67:14–22, ECF No. 30.  He considered the robocalls and the voicemails to be a "nuisance" to him, *id.* at 74:18–75:2, and he said that those "annoying" calls decreased the enjoyment he received from using his cell phone and wasted his time.  *Id.* at 75:21–76:6; 78:12–16.

It is not the Court's job to weigh the credibility of evidence at summary judgment; moreover, an "identifiable trifle" of injury is sufficient for standing purposes so long as it is concrete. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (internal quotation marks and citation omitted). Through his deposition, Plaintiff has put forth sufficient evidence to raise a genuine dispute of material fact that he, indeed, suffered the exact type of harm that Congress aimed to prevent when it enacted the TCPA's prohibition on the use of prerecorded calls to cell phones. Accordingly, he has standing to pursue his claim.[3]

## B. Fairly Traceable to Defendant

In addition to arguing that Plaintiff has not shown an injury in fact, Defendant also contends that Plaintiff has not shown that any injury is fairly traceable to it.

Plaintiff testified at deposition that he would have been annoyed even if a live person had called him (as opposed to receiving a prerecorded call). Throndson Dep. 65:6–22, ECF No. 30. Defendant argues that, because Plaintiff admitted he would have been annoyed even if a live agent had called seeking to collect Cousins' debt, any injury he suffered is not traceable to Defendant's

---

[3] The Court therefore need not consider whether Plaintiff has also provided evidence of tangible injuries, such as wear and tear on his phone's battery or depletion of its memory.

violation of the TCPA—using a prerecorded voice to call Plaintiff's cell phone. Mot. Summ. J. 17–18, ECF No. 27.

Defendant's argument is unpersuasive.  The second requirement of standing is "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Macy*, 897 F.3d at 752 (internal quotation marks and citation omitted).

Here, Plaintiff's injury is directly traceable to Defendant's prerecorded voice messages.  Without them, he would not have suffered the injury.  No independent action by another party interrupted the causal chain.

It is irrelevant to the standing analysis whether Plaintiff would have suffered the injury even if Defendant called him in a manner that did not violate the TCPA.  An injury caused by a use of prerecorded calls and an injury caused by a call from a live agent are both injuries traceable to Defendant's conduct, meaning there would be standing to sue for both injuries, but a claim based on the latter would fail on the merits because it is not a violation § 227(b)(1)(A)(iii) to initiate a call via a live agent.  To hold otherwise would virtually preclude anyone from having standing to assert a violation of § 227(b)(1)(A)(iii) due to an entity's use of prerecorded calls.

For these reasons, Plaintiff has satisfied the "fairly traceable" requirement. *E.g.*, *DeClue v. United Consumer Fin. Servs. Co.*, No. 16cv2833, 2017 WL

400144, \*\*2–3 (S.D. Cal. Apr. 19, 2017) (rejecting identical "fairly traceable" argument in TCPA claim based on the defendant's use of an ATDS); *Kalmbach v. Nat'l Rifle Ass'n of Am.*, No. C17-399-RSM, 2017 WL 3172836, at \*3 (W.D. Wa. July 26, 2017) (rejecting the same "fairly traceable" argument and finding standing for a similar state-law claim based on use of prerecorded calls); *LaVigne*, 215 F. Supp. 3d at 1147 (rejecting the argument that the plaintiff's TCPA injury had to stem specifically from the use of an automated dialing system rather than a manually dialed call); *Ung*, 198 F. Supp. 3d at 1040 (finding the plaintiff's harm was fairly traceable to the defendant's conduct because the defendant's calls were the source of the harm).[4]

## IV.   CONCLUSION

For the reasons stated above, Plaintiff has raised a genuine dispute of material fact as to his standing to pursue his TCPA claim.  Defendant's motion for summary judgment, ECF No. 27, is **DENIED**, and the Clerk shall remove the same from the Court's pending motions list.

**IT IS SO ORDERED.**

---

[4] Alternatively, and in any event, immediately after testifying that he would have been equally annoyed had the call come from a live person, Plaintiff testified that he actually had "[a] higher level of annoyance because it's automated."  Throndson Dep. 65:24–66:1, ECF No. 30.   When enacting the TCPA, Congress determined that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons."  S. Rep. No. 102-178 at 4–5, *reprinted in* 1991 U.S.C.C.A.N. 1968, 1972.  This at least raises a genuine dispute of material fact, even if Defendant was correct in its characterization of the "fairly traceable" inquiry.

_/s/ Michael H. Watson_
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**